# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-cv-61598-AHS

JOCELYNE CASIMIR,

    Plaintiff,

v.

NORTHSTAR LOCATION SERVICES, LLC,

    Defendant.

_____/

## **DEFENDANT'S MOTION TO DISMISS**

Defendant, NORTHSTAR LOCATION SERVICES, LLC ("Defendant"), by and through the undersigned counsel, hereby files its Motion to Dismiss under Rule 12(b)(6), Fed. R. Civ. P.

The Complaint filed by Plaintiff, Jocelyne Casimir ("Plaintiff"), relies exclusively on the holding of the United States Court of Appeals for the Eleventh Circuit in *Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. April 21, 2021), which (1) is subject to a pending motion for rehearing *en banc* which has drawn a significant number of amicus briefs[1], (2) was effectively overruled by the United States Supreme Court, in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (June 25, 2021), and (3) is inapplicable here because in *Hunstein,* the parties stipulated that a transmission of information between a debt collector and its mailing vendor was a "communication" under 15 U.S.C. § 1692c(b), of the Fair Debt Collection Practices Act ("FDCPA"), as opposed to automated processing of information to an agent that constituted nothing more than an intra-company disclosure.

---

[1] A copy of the *Hunstein* docket sheet from the United States Court of Appeals for the Eleventh Circuit, showing the pending motion for rehearing *en banc* and the amicus briefs, is attached as Exhibit A.

For these reasons, Plaintiff here cannot rely on *Hunstein,* and, being unable to rely on *Hunstein*, fails to state a claim upon which relief can be granted, under either her Count 1 claim under the FDCPA, or her Count 2 claim under the Florida Consumer Collection Practices Act ("FCCPA"). Accordingly, her Complaint should be dismissed.

## I. Standard on a Motion to Dismiss

In a complaint, a plaintiff must plead "(1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff is obligated to provide the "grounds" of plaintiff's "entitle[ment] to relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The *Twombly/Iqbal* standard requires a pleading to contain sufficient factual allegations to show a "plausible" claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). *Twombly/Iqbal* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail to indicate that the plaintiff has a substantial case." *Id*. In determining "plausibility", the court may disregard conclusory allegations even if they are alleged in the form of factual allegations. *Twombly,* 127 S. Ct. at 1950. Further, although for the purposes of a motion to dismiss a court must take all factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Id.* at 1965.

## II. Plaintiff Fails to State a Claim in Count 1 of Her Complaint Under the FDCPA

### A. The *Hunstein* Decision

In the *Hunstein* case, a plaintiff, like Plaintiff here, filed a complaint alleging violations of both the FDCPA (15 U.S.C. §§ 1692c(b)), and the FCCPA (Fla. Stat. § 559.72(5)). The district court dismissed the *Hunstein* complaint for failure to state a claim, concluding that he hadn't sufficiently alleged that the debt collector's transmittal of information to a vendor with whom it contracted, Compumail, for purposes of generating and/or mailing dunning letters violated § 1692c(b) because it didn't qualify as a communication "in connection with the collection of a[ny] debt." On appeal, the Eleventh Circuit reversed.

Initially, the Eleventh Circuit looked at whether the plaintiff in *Hunstein* had standing to bring his claim. The Court noted that the case-or-controversy requirement, which has been construed to embody the doctrine of standing, "confines the federal courts to a properly judicial role." *Hunstein*, 994 F.3d at 1345, *citing Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The "irreducible constitutional minimum" of Article III standing entails three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The *Hunstein* case involved the first element, injury in fact, which consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Hunstein,* 994 F.3d at 1345, *citing Lujan* at 560, 112 S.Ct. 2130. The *Hunstein* Court cited T*richell v. Midland Credit Mgmt., Inc.,* 964 F.3d 990 (11th Cir. 2020), a case involving the FDCPA, for the proposition that "[e]ach subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied." *Id.*

at 996–97. The standing question in *Hunstein* implicated the concreteness sub-element, according to the Court.

A plaintiff can meet the concreteness requirement in any of three ways, according to *Hunstein*. First, he can allege a tangible harm. Second, a plaintiff can allege a "risk of real harm." Third, in the absence of a tangible injury or a risk of real harm, a plaintiff can identify a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury. *Hunstein*, 994 F.3d at 1346, *citing* Spokeo, 136 S. Ct. at 1549.

After examining the three, the Court ruled that Hunstein did not allege a tangible harm, nor could he show a risk of real harm. *Id. Hunstein* ruled that the Plaintiff could show a statutory violation, after analogizing the FDCPA's prohibition on a debt collector communicating information in connection with the collection of any debt with third parties to common law "invasion of privacy" torts. *Id.* at 1348.

Upon finding that the plaintiff had standing, the Court looked at the merits of the FDCPA claim, noting that "§ 1692c(b) states that, subject to several exceptions, 'a debt collector may not communicate, in connection with the collection of any debt,' with anyone other than the consumer. 15 U.S.C. § 1692c(b)." *Hunstein* at 1350. Importantly, it found that:

> [t]he parties agree that [Defendant] Preferred is a "debt collector," that [Plaintiff] Hunstein is a "consumer," and that the alleged debt at issue here was a "consumer debt," all within the meaning of § 1692c(b). **Helpfully, the parties also agree that Preferred's transmittal of Hunstein's personal information to [Mailing Vendor] Compumail constitutes a "communication" within the meaning of the statute.**

*Id.* at 1349 (emphasis added). Section 1692a(2) defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Clearly, in the definition, "person" must be read as a third party. **Defendant does not**

**agree that any "communication" was made here, even if, as alleged, it sent information to its vendor and agent for purposes of generating dunning letters.**

After noting agreement on the elements referenced in the preceding paragraph, the *Hunstein* Court proceeded to determine the sole question before it -- whether the debt collector's communication with its vendor was "in connection with the collection of any debt," such that it violates § 1692c(b). *Id. a*t 1349. The *Hunstein* Court found that the "communication," which the parties' stipulated the transfer of information was, was made "in connection with the collection of a debt." It rejected arguments that a communication "in connection with the collection of a debt" requires a demand for payment and rejected a "holistic, multi-factoring balance test" to determine the nature of the communication. The *Hunstein* Court concluded that because the communication, as stipulated by the parties, was "in connection with the collection of any debt," the plaintiff adequately stated a claim.

### B. There is No Communication to a Third Party in This Case

While *Hunstein* accepted as true, without delving deeper, the parties' stipulation that the transmission of information by the debt collector in that particular case to its vendor was a communication to a third-party, within 15 U.S.C. § 1692a(2), there is no such stipulation in this case, nor will there be. Defendant maintains that any transmission of information to employees of Defendant or to Defendant's independent contractor or agents, including the vendor that generates dunning letters, is not a communication as set forth in the FDCPA, but is an intra-company disclosure.

As indicated above, with several exceptions, the FDCPA prohibits debt collectors from communicating with any person other than the consumer in connection with the collection of a debt. The FDCPA does not preclude, however, communications among the representatives of the

debt collector. A letter vendor, as an agent of the debt collector, is a representative of the debt collector and therefore the FDCPA permits communications aimed at and confined to permitting the agent to perform its assigned tasks. Indeed, the FDCPA contemplates exactly such contacts in furtherance of communications between the consumer and the debt collector.

Clearly, the FDCPA does not forbid debt collection. *See, e.g., Davis v. Hollins Law,* 968 F.Supp.2d 1072, 1080 (E.D.Cal. 2013) ("the FDCPA does not prohibit debt collection--only unfair debt collection"). Further, the Eleventh Circuit has recognized that debt collectors may have employees or other debt-collector representatives to whom they may entrust consumer account data without committing a *per se* violation of the FDCPA. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201-02 (11th Cir. 2010) (debt collector liable for debt-collector partner's breach of FDCPA); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (the FDCPA "is not aimed at the shareholders of debt collectors"). Congress, in enacting the FDCPA, thus contemplated that the "debt collector" who may have access to a consumer's information may comprise more than a single, individual human being.

If a debt collector can have employees or partners without violating the FDCPA's prohibition against third-party communication, it follows that a debt collector can likewise have independent contractors act as its agents--likewise without violating the FDCPA. "Agency is defined as 'the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991), quoting *RESTATEMENT (Second) OF AGENCY* § 1 (1958). The principal of an agent, after all, is subject to the same principles of *respondeat superior* as is the employer of an employee--because of that fiduciary relationship. *See Franza v. Royal Caribbean Cruises, Ltd*., 772 F.3d 1225, 1249

(11th Cir. 2014) ("r*espondeat superior* derives from a principal's right to control the conduct of its agents"). Thus, for the purposes of the FDCPA, comparing an agent to an employee results in a difference without a distinction.

Absent a clear expression of intent to the contrary, one must presume that Congress intended debt collectors to conduct debt-collection businesses in an ordinary, business-like way, using employees and agents where it makes sense to do so, as long as the debt collector, its employees, and its agents all comply with the FDCPA. Indeed, Congress clearly expected debt collectors to have employees engaged in debt collection. See 15 U.S.C. § 1692(c) (Congress permitted debt collection if carried on in a non-abusive manner); and 15 U.S.C. § 1692a(6) (defining "debt collector" to include "any person who uses any instrumentality of interstate commerce or the mails *in any business* the principal purpose of which is the collection of any debts") (emphasis added) and 15 U.S.C. § 1692b(1) (debt collector engaged in obtaining location information must *identify its employer* if asked to do so by the third party) (emphasis added). Disallowing such conveyance of information reads those provisions out of the statute. One should not presume that Congress wasted its time by including those provisions in the Act.

Therefore, a debt collector can convey information about a consumer's debt to its employees or agents without violating the FDCPA's prohibition against communicating with a third party. Such activity is not a communication in connection with the collection of the debt. It is debt collectors conducting debt-collection activity, and they have partners, employees, and agents assisting them in their jobs. To hold otherwise runs contrary to congressional intent.

Because transmission of information within the debt collector organization, including transmission to employee and agents, including vendors, cannot constitute a "communication," and because that question was never considered by the *Hunstein* Court (since the parties there

stipulated there was a "communication"), the Court should review the issue here, and determine that the failure to allege a real communication to a third party is fatal to Plaintiff's FDCPA claim. Plaintiff's Count 1 must be dismissed.

### C. *Hunstein* Was Effectively Overruled by United States Supreme Court

Even if the Court determines that the *Hunstein* Court ruled that transmission of information to an agent, including vendor, is a "communication" to a third party, Defendant is entitled to an Order dismissing Plaintiff's Complaint here. *Hunstein* has been effectively overruled by the United States Supreme Court.

In *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190 (June 25, 2021), the Supreme Court, in taking up a review of standing similar to the review conducted by the *Hunstein* Court, held that the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." 141 S. Ct. at 2210. In reaching this determination, which certainly presents a hurdle to the mailing vendor theory advanced in *Hunstein*, the Court observed:

> ... the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. **That new argument is ... unavailing.** Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications. Moreover, even the plaintiffs' cited cases require evidence that the defendant actually "brought an idea to the perception of another," *Restatement of Torts* § 559, Comment a, p. 140 (1938), and thus generally require evidence that the document was actually read and not merely processed, *cf. Ostrowe v. Lee*, 256 N.Y. 36, 38–39, 175 N.E. 505, 505–506 (1931) (Cardozo, C. J.). That evidence is lacking here. In short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing.

*6 Id. at 2210 n.6 (citations omitted) (emphasis added).

The Supreme Court, in a decision that came less than two months after *Hunstein*, made clear that transmission of information between a debt collector and its mailing vendor are "intra-company disclosures" that cannot give rise to FDCPA claims. Pursuant to *TransUnion LLC, supra,* the Court must dismiss Plaintiff's Count 1.

### III.   Plaintiff Fails to State a Claim in Count 2 of Her Complaint Under the FCCPA

Plaintiff's Count 2 is under Fla. Stat. § 559.72(5), which prohibits any person, in collecting consumer debts, from "[d]isclos[ing] to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Plaintiff's Count 2 must be dismissed because Plaintiff has failed to allege and cannot show the elements of the claim.

Parsing out the statutory language, then, a claim under Fla. Stat. § 559.72(5) must allege (a) a disclosure of information to a person other than a member of debtor's family, (b) that such person does not have a legitimate business need for the information, (c) that the debt collector knows or has reason to know that such person does not have a legitimate business need for the information, and (d) that such information affected the debtor's reputation. *Compare Heard v. Mathis,* 344 So.2d 651, 655 (Fla. 5th DCA 1977). Here, Plaintiff cannot properly allege, let alone prove, a single one of the foregoing elements.

As set forth in prior sections of this motion, there was no "disclosure" of any information outside an intra-company exchange of information between the debt collector and its agent. Moreover, it cannot be disputed that, even if the transmission of information between Defendant, a debt collector, and its word processing / mailing vendor were considered as "disclosure" under Fla. Stat. 559.72(5), that such disclosure was for a "legitimate business need." As alleged by

Plaintiff, in her Complaint, the "Third-Party" retained by Defendant "compiled Plaintiff's personal information and prepared a letter that was to be sent to Plaintiff in an attempt to collect the Consumer Debt." Complaint, ¶¶ 22, 26.  That is, as alleged, any disclosure was made for purposes of preparing the dunning letter, and not for any illegitimate purpose, such as harassing Plaintiff or damaging her reputation.  It is noteworthy that Plaintiff, in her Complaint, does not even allege that Defendant "knew or had reason to know" that the alleged disclosure of information was not for a legitimate business need.

Finally, as even if the Court in *Hunstein* acknowledged, any disclosure of information by Defendant to its word processing / mailing vendor will result is absolutely no harm to Plaintiff's reputation.  *Hunstein* stated, "we doubt that the Compumails of the world routinely read, care about, or abuse the information that debt collectors transmit to them." *Hunstein*, 994 F.3d at 1352.  While Plaintiff's Complaint, in Paragraph 23, makes an effort to allege some damage to reputation, the allegation falls far short of the requisite level of damage to reputation in the community, as required by Florida case law for a valid claim under Fla. Stat. § 559.72(5).  Again, the disclosure that is alleged is an exchange of information with a word processing / mailing vendor of Defendant, which vendor necessarily receives voluminous information daily.

Damage to reputation requires more.  In *Heard v. Mathis,* 344 So.2d 651, 655 (Fla. 5th DCA 1977), a debtor filed a claim under Fla. Stat. 559.72(5) when a creditor told an intimate friend of the debt about the debt.  The Court explained:

> We fail to see how, on the basis of this record, the disclosure of a $200.00 debt owed by Heard to Mathis, which disclosure was made to Simmons, an intimate personal friend of Heard, affected the debtor's reputation. Heard has failed to present proof necessary to sustain her claim that her reputation was affected. Reputation is what is reported or understood from reports to be the community's estimate of the person's character. *Fine v. State,* 70 Fla. 412, 70 So. 379 (1915). It is difficult to conclude on the basis of one unprivileged communication that the community's estimate of the debtor's character was affected. We interpret

the statute as requiring—unlike causes for per se defamations which are complete upon publication—a showing that the debtor's reputation was adversely affected following the publication. We find no error in the lower court's denial of the counterclaim.

As set forth at the outset of this Motion, in the section discussing the proper standard to apply, the Court should pay no heed a formulaic recitation of the elements of a cause of action or conclusory allegations of "facts," such as the allegations set forth in Paragraph 23 of Plaintiff's Complaint, but should consider whether allegations in the Complaint really support an argument that the transmission of information between Defendant and its word processing / mailing vendor affected Plaintiff's reputation in the community or the community's estimation of her character, as required by *Heard*, *supra*.  They do not.

Because Plaintiff cannot allege, much less show, the elements of a valid claim under Fla. Stat. § 559.72(5), her Count 2 must be dismissed.

**For the foregoing reasons**, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint and grant such other relief as it may deem appropriate.

Respectfully submitted this 10th day of August, 2021.

      *s/  Jose I. Leon*
Jose I. Leon, FBN 958212
JLeon@grsm.com
GORDON & REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900
Miami, FL 33131
MIA_Eservice@gordonrees.com
Tel:  305-428-5330
*Counsel for Defendant Northstar Location Services, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a true and correct copy of the foregoing on all counsel or parties of record on the Service List below.

*s/ Jose I. Leon*
Jose I. Leon, Esq.

**SERVICE LIST**

Jibrael S. Hindi, Esq.
Thomas J. Patti, Esq.
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
jibrael@jibraellaw.com
tom@jibraellaw.com